BRUCE J. HIGHMAN, CBN 101760
LOUIS A. HIGHMAN, CBN 61703
HIGHMAN & HIGHMAN
A Professional Law Association
870 Market Street, Suite 467
San Francisco, CA 94102
Telephone: (415) 982-5563
Fax: (415) 982-5202
Email: bruce.highman@highmanlaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO-OAKLAND DIVISION

| | |
|---|---|
| RONNA S. DIGERLANDO, aka RONNA S. ANDERSON-DIGERLANDO, aka RONNA S. ANDERSON,<br><br>　　　　Plaintiff,<br><br>　-v-<br><br>ABM GOVERNMENT SERVICES, LLC, a limited liability company; ABM INDUSTRIES INCORPORATED, a corporation; MARK KLOHN; ANTHONY FUZIE; and DOES 1-10, inclusive,<br><br>　　　　Defendants. | No. 3:16-cv-06812-LB<br><br>FIRST AMENDED COMPLAINT FOR RELIEF FOR VIOLATION OF FAMILY MEDICAL LEAVE ACT, FAMILY RIGHTS ACT, FAIR EMPLOYMENT AND HOUSING ACT, AMERICANS WITH DISABILITIES ACT, TITLE VII, LABOR CODE §§ 6310, 98.6, and 1102.5, AND TORTIOUS DISCHARGE IN VIOLATION OF PUBLIC POLICY; DEMAND FOR JURY TRIAL |

**PARTIES**

　　1. Plaintiff Ronna S. DiGerlando, aka Ronna S. Anderson-DiGerlando, aka Ronna S. Anderson, worked as the Director Hospital Environmental Services (HES) for defendants ABM Government Services, LLC, a limited liability company, and ABM Industries Incorporated, a corporation, (hereinafter collectively "ABM"), at David Grant Medical Center at Travis Air Force Base from October 1, 2013, until her termination on November 24, 2014. From on or about April 21, 2014, until her termination on November 24, 2014, defendant Mark Klohn was the Senior Director HES and her immediate manager. Defendant Anthony Fuzie was the Contract Manager. Ms. DiGerlando reported directly to Mr. Fuzie until April 21, 2014, at which time she began reporting to Mr. Klohn who reported to Mr. Fuzie.

2. The true names and capacities, whether individual, corporate, partnership, associate, or otherwise, of defendants sued herein as Does 1-10, inclusive, are unknown to plaintiff, who therefore sues said defendants by such fictitious names and will pray leave to amend this complaint together with appropriate charging allegations when the same have been ascertained. Plaintiff is informed and believes and thereupon alleges that each of said fictitiously named defendants are responsible in some manner for the occurrences herein alleged, and that plaintiff's damages as herein alleged, were proximately caused by their conduct.

## JURISDICTION

3. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 2617, 42 U.S.C. § 12117, and 42 U.S.C. § 2000e-5 because the first claim for relief is brought under the Family Medical Leave Act, the fourth claim under the Americans with Disabilities Act, and the fifth claim under Title VII. The other claims for relief are brought under California law. The Court has supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367.

## VENUE

4. Under subdivision (c)(1) of 28 U.S.C. § 1391, defendants Klohn and Fuzie are residents of the Northern District of California for venue purposes because they are natural persons domiciled in the Northern District of California. Under subdivision (d) of § 1391, defendant ABM Industries Incorporated is a resident of the Northern District of California for venue purposes because if the Northern District of California were a separate state, ABM Industries would be an entity subject in the Northern District of California to the Court's personal jurisdiction with respect to the civil action in question. Under subdivisions (c)(2) and (d) of § 1391, defendant ABM Government Services, LLC, is a resident of the State of California for venue purposes because if each judicial district of the State of California were a separate state, ABM Government Services would be an entity subject in some or all of those judicial districts to the Court's personal jurisdiction with respect to the civil action in question. Plaintiff does not presently know if ABM Government Services, LLC, is a resident of the Northern District of California in that plaintiff doesn't presently know whether if the Northern District were a separate state, ABM Government Services would be an entity subject in the Northern District to the Court's personal jurisdiction with respect to the civil action in question.

5. Pleaded on information and belief, the defendants sued herein as Does 1-10 are residents of the State of California for venue purposes.

6. Under subdivision (b)(1) of 28 U.S.C. § 1391, venue is proper in the Northern District of California because all defendants are residents of the State of California for venue purposes under 28 U.S.C. § 1391 and at least three of the defendants are residents of the Northern District of California for venue purposes.

**FIRST CLAIM FOR RELIEF**
**Violation of Family Medical Leave Act**
**Defendants are Defendants and Each of Them**

7. Plaintiff refers to the allegations of paragraphs 1-6 of the complaint and incorporates the same herein by this reference as though set forth in full.

8. Ms. DiGerlando has suffered from a serious health condition of her abdomen and colon, including without limitation diverticulitis with perforation, hemorrhage, and abscess, and peritonitis. Her serious health condition caused her to need emergency colostomy surgery on March 11, 2014, inpatient care in the hospital from March 11-20, 2014, follow-up surgery and an in-patient stay in the hospital in July 2014, and continuing treatment by health care providers. Due to her serious health condition, she took medical leaves from her employment with ABM, including without limitation from March 11-April 20, 2014, July 17, 2014 until some time in August 2014, for part of the day on September 12, 2014, for other days when she wasn't feeling well, and at other times for medical appointments related to her serious health condition. Her medical leaves due to her serious health condition were protected under the Family Medical Leave Act (FMLA) and the California Family Rights Act (CFRA).

9. Before she went out on medical leave beginning March 11, 2014, Ms. DiGerlando was the manager over both housekeeping and grounds. The feedback she received regarding her performance was favorable.

10. While Ms. DiGerlando was on leave and in the hospital, her daughter saw Mr. Fuzie to give him Ms. DiGerlando's company laptop.  Mr. Fuzie told her daughter that he thought the stress and long hours from the job had something to do with her illness. Also, while Ms. DiGerlando was on leave, her daughter had her cell phone. ABM employees called and told her daughter that Mr.

Fuzie, Mr. Klohn, and Mr. Singh, who had been her assistant manager, were trying to get employees to say bad things about her including that she had misappropriated supplies, she had made false statements in employee write-ups, and she had mistreated employees. When she returned to work on April 21, 2014, Mr. Fuzie told her that while she was out on leave, he had heard that she wasn't going to be able to return to work. He also told her that they had a letter with her return date but they didn't have a release. She replied that that letter was her release to full duty. He said that he had heard that she might need additional treatment. She replied that she was going to need further surgery in three to six months. He asked if the further surgery could be optional. She said no, it was not optional. He told her that she was no longer managing the housekeeping or grounds departments, that Mark Klohn was now the senior director for both departments, and she would report to Mr. Klohn. He also told her that while she was on leave, the company had investigated her for misappropriating supplies, writing employees up based on fabricated information, and showing favoritism toward certain employees. He additionally said that she had not properly trained Mr. Singh or given him any authority. He told her that her title and pay would remain the same. She denied the accusations against her. She indicated that since they hadn't fired her and were instead essentially turning her into a $95,000 a year secretary, they must not have proof of their accusations against her and they weren't true. He indicated they didn't have proof but where there's smoke, there's fire.

11. Also on April 21, 2014, Elia Camacho, a supervisor, told Ms. DiGerlando that Mr. Singh had said that she had gotten a colostomy bag.

12. On Friday, September 12, 2014, Ms. DiGerlando felt a pull in the left side of her stomach while at work. She told her manager, Mr. Klohn, that she felt she had pulled something. She went to the bathroom, lifted her top, and saw that the left side of her stomach, which is the area where she had had surgery, was a bit swollen. She told Mr. Klohn that she was going home to put ice on it. Mr. Klohn told her that she should do whatever she thought she had to do. He was on the phone at the time. She went to her desk and collected her belongings, then went to look for Mr. Klohn again to say good-bye, but couldn't find him, so she went home. While she was home, she rested in bed and her husband turned off her cell phone. Mr. Klohn left her a voicemail and Mr. Fuzie left her at least three voicemails that she needed to come back to work to complete an accident/injury report and a

1  drug test. Ms. DiGerlando didn't listen to their voicemails until that evening, and she didn't come
2  back to work that day.

3       13. When she returned to work on Monday, September 15, 2014, she filed an injury report
4  in which she explained the injury, how it happened, and her notification to Mr. Klohn that she was
5  going home.

6       14. On September 18, 2014, Mr. Klohn gave her a reprimand for going home allegedly
7  without notifying the company she was going home, without filing an injury report, and without
8  responding to voicemails. The reprimand was unjustified. She had told Mr. Klohn she was going
9  home. It was more important for her to go home and take care of herself than to file the injury report
10 that day. Furthermore, as her supervisor, Mr. Klohn should have filed the injury report for her. But
11 when she turned in her injury report on September 15 to John Barnes, who was responsible for
12 collecting the injury reports, he told her that Mr. Klohn had told him he didn't fill out the injury
13 report form for Ms. DiGerlando because he didn't know how to do it. She didn't respond to
14 voicemails because she was ill and resting in bed and her husband had turned off her phone.

15      15. On September 26, 2014, Albert Olivarez, a supervisor, told Ms. DiGerlando that he had
16 known for a long time that key #18 was missing. He said that he last saw it when he gave it to an on-
17 call housekeeper but didn't recall which on-call housekeeper. Ms. DiGerlando thought that perhaps
18 the on-call housekeeper had returned the key into the wrong slot in the key box. Accordingly, she
19 looked for it everywhere in the box but couldn't find it. She then reported on September 26 that Mr.
20 Olivarez had told her it was missing. Mr. Klohn asked her that day why she hadn't done key
21 inventories. She explained that ABM didn't have a policy to do key inventories other than that its
22 contract with the Air Force to perform housekeeping and maintenance services at David Grant
23 Medical Center required it to do an inventory at the beginning and end of the contract. Nor did it
24 have a policy of recording who was issued keys. The next work day, September 29, Mr. Fuzie and
25 Mr. Clay asked her questions about the matter. No further questions were asked her about this
26 incident after September 29. In or about October 2014, ABM created a policy to do regular key
27 inventories and record who was issued keys.

28      16. On November 24, 2014, Mr. Clay, Mr. Fuzie, and Mr. Klohn met with Ms. DiGerlando

and terminated her. She was given a notice which listed as the reasons for termination:

> Failure to perform monthly key inventory as required
> Failed to insure supervisors were properly trained in recording key assignments
> Failed to reprimand the Housekeeping Supervisor for loss of key set
> Failed to report loss of key set as required
> Failed to record who was issued the key set

17. These reasons were false and pretextual. The company had no policy of performing key inventories or recording who was issued keys until after Ms. DiGerlando reported that key #18 was missing. Ms. DiGerlando reported the loss of the key set on the same day that she learned of it. She did not reprimand Mr. Olivarez regarding the loss of the key because when she reported that Mr. Olivarez had informed her that the key was missing, Mr. Klohn and Mr. Clay had told her that they would handle everything from there. They in fact terminated Mr. Olivarez on the same day they terminated Ms. DiGerlando.

18. Under the FMLA, it is unlawful to use FMLA leave as a negative factor in employment actions. Defendants violated the FMLA in that they used her FMLA leaves as a negative factor in deciding to terminate her for false and pretextual reasons.

19. As the proximate result of defendants' violation of the FMLA, plaintiff has suffered damages to be shown according to proof, including without limitation, for lost income and benefits with prejudgment interest thereon.

20. Plaintiff is entitled to an additional award as liquidated damages equal to the amount awarded to her for lost income and benefits with prejudgment interest thereon.

21. As the further proximate result of defendants' violation of the FMLA, Ms. DiGerlando has had to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown according to proof.

WHEREFORE, Ms. DiGerlando prays judgment against defendants and each of them, as set forth below.

**SECOND CLAIM FOR RELIEF**
**Violation of California Family Rights Act**
**Defendants are Defendants ABM Government Services, LLC,**
**ABM Industries Incorporated and Does 1-10, inclusive**

22. Plaintiff refers to the allegations of paragraphs 1-17 of the complaint and incorporates the same herein by this reference as though set forth in full.

23. Under the California Family Rights Act (CFRA), it is unlawful for medical leaves protected by the CFRA to be a substantial motivating reason for adverse employment actions taken against an employee. Defendants violated the CFRA in that Ms. DiGerlando's medical leaves were substantial motivating reasons for their taking adverse employment actions against her, including without limitation, by taking away her duties and making false accusations against her when she returned from medical leave, by reprimanding her when she went home early on September 12, 2014 due to her pulling something in her stomach and the stomach being swollen, and by terminating her based on false and pretextual reasons.

24. Plaintiff has filed a complaint with the EEOC for disability, sex and age discrimination which was cross-filed with the California Department of Fair Employment and Housing (DFEH). Plaintiff has received right-to-sue letters thereon from the EEOC and DFEH. The claim under the CFRA is sufficiently related to the claim for disability discrimination alleged in the administrative complaint that the administrative complaint and right-to-sue letter adequately exhaust her administrative remedies for purposes of this CFRA claim for relief as well as for disability, sex, and age discrimination.

25. As the proximate result of defendants' violation of the CFRA, Ms. DiGerlando has suffered damages to be shown according to proof, including without limitation, for lost income and benefits with prejudgment interest thereon, emotional distress, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation, and other nonpecuniary losses.

26. Defendants' violation of the CFRA was malicious, oppressive, fraudulent, and done with reckless and conscious indifference to Ms. DiGerlando's rights, and Ms. DiGerlando is entitled to an award of punitive damages therefor to be shown according to proof.

27. As the further proximate result of defendants' violation of the CFRA, Ms. DiGerlando has had to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown according to proof.

WHEREFORE, Ms. DiGerlando prays judgment against defendants ABM Government Services, LLC, ABM Industries Incorporated and Does 1-10, inclusive, as set forth below.

/

**THIRD CLAIM FOR RELIEF**
**Violation of California Fair Employment and Housing Act**
**Defendants are Defendants ABM Government Services, LLC,**
<u>**ABM Industries Incorporated and Does 1-10, inclusive**</u>

28. Plaintiff refers to the allegations of paragraphs 1-17 and 24 of the complaint and incorporates the same herein by this reference as though set forth in full.

29. Plaintiff's serious health condition was a physical disability, including an actual disability, a record of a disability, and a condition regarded as a disability both at present and potentially in the future by ABM, her employer.

30. When Mr. Fuzie told Ms. DiGerlando that she had not properly trained Mr. Singh or given him any authority, she denied the accusation and also said that Mr. Singh's problem with her was that she was a woman. Mr. Fuzie replied that that could just be from Mr. Singh's culture.

31. Mr. Klohn also discriminated against women. He said that women were stupid and couldn't be trusted. He pejoratively used the nickname "Princess" and "Little Princess" for Melisa Baraona, a woman housekeeper, and "Sleeping Beauty" for Elia Camacho, a woman supervisor. Mr. Klohn filled three supervisor positions by hiring less qualified men for the positions rather than hiring a woman. Ms. DiGerlando's recollection is that before Mr. Klohn arrived in March 2014, most of the housekeepers were women. Her recollection is that Mr. Klohn hired mostly men as housekeepers.

32. Under the California Fair Employment and Housing Act (FEHA), it is unlawful for disabilities or sex to be substantial motivating reasons for adverse employment actions taken against an employee. Defendants violated the FEHA in that Ms. DiGerlando's disability and sex were substantial motivating reasons for their taking adverse employment actions against her, including without limitation, by taking away her duties and making false accusations against her when she returned from medical leave, by reprimanding her when she went home early on September 12, 2014 due to her pulling something in her stomach and the stomach being swollen, and by terminating her based on false and pretextual reasons.

33. As the proximate result of defendants' violation of the FEHA, Ms. DiGerlando has suffered damages to be shown according to proof, including without limitation, for lost income and benefits with prejudgment interest thereon, emotional distress, inconvenience, mental anguish, loss

of enjoyment of life, loss of reputation, and other nonpecuniary losses.

34. Defendants' violation of the FEHA was malicious, oppressive, fraudulent, and done with reckless and conscious indifference to Ms. DiGerlando's rights, and Ms. DiGerlando is entitled to an award of punitive damages therefor to be shown according to proof.

35. As the further proximate result of defendants' violation of the FEHA, Ms. DiGerlando has had to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown according to proof.

WHEREFORE, Ms. DiGerlando prays judgment against defendants ABM Government Services, LLC, ABM Industries Incorporated and Does 1-10, inclusive, as set forth below.

**FOURTH CLAIM FOR RELIEF**
**Violation of Americans with Disabilities Act**
**Defendants are Defendants ABM Government Services, LLC,**
**ABM Industries Incorporated and Does 1-10, inclusive**

36. Plaintiff refers to the allegations of paragraphs 1-17, 24 and 29 of the complaint and incorporates the same herein by this reference as though set forth in full.

37. Plaintiff's medical leaves were accommodations that she requested due to her physical disability and were protected conduct under the Americans with Disabilities Act (ADA).

38. Ms. DiGerlando's physical disability and her taking of medical leaves related to the physical disability was a determining factor in causing the taking away of her duties in April 2014, her reprimand in September 2014, and her termination in November 2014. By taking these adverse employment actions against Ms. DiGerlando because of her physical disability and her taking medical leaves related to her physical disability, defendants violated the ADA.

39. As the proximate result of defendants' violation of the ADA, Ms. DiGerlando has suffered damages to be shown according to proof, including without limitation, for lost income and benefits with prejudgment interest thereon, emotional distress, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation, and other nonpecuniary losses.

40. Defendants' violation of the ADA was malicious, oppressive, fraudulent, and done with reckless and conscious indifference to Ms. DiGerlando's rights, and Ms. DiGerlando is entitled to an award of punitive damages therefor to be shown according to proof.

41. As the further proximate result of defendants' violation of the ADA, Ms. DiGerlando

has had to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown according to proof.

WHEREFORE, Ms. DiGerlando prays judgment against defendants ABM Government Services, LLC, ABM Industries Incorporated and Does 1-10, inclusive, as set forth below.

**FIFTH CLAIM FOR RELIEF**
**Violation of Title VII**
**Defendants are Defendants ABM Government Services, LLC,**
**ABM Industries Incorporated and Does 1-10, inclusive**

42. Plaintiff refers to the allegations of paragraphs 1-17, 24 and 30-31 of the complaint and incorporates the same herein by this reference as though set forth in full.

43. Ms. DiGerlando's sex, female, was a determining factor in causing the taking away of her duties in April 2014, her reprimand in September 2014, and her termination in November 2014. By taking these adverse employment actions against Ms. DiGerlando because of her sex, defendants violated Title VII.

44. As the proximate result of defendants' violation of Title VII, Ms. DiGerlando has suffered damages to be shown according to proof, including without limitation, for lost income and benefits with prejudgment interest thereon, emotional distress, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation, and other nonpecuniary losses.

45. Defendants' violation of Title VII was malicious, oppressive, fraudulent, and done with reckless and conscious indifference to Ms. DiGerlando's rights, and Ms. DiGerlando is entitled to an award of punitive damages therefor to be shown according to proof.

46. As the further proximate result of defendants' violation of Title VII, Ms. DiGerlando has had to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown according to proof.

WHEREFORE, Ms. DiGerlando prays judgment against defendants ABM Government Services, LLC, ABM Industries Incorporated and Does 1-10, inclusive, as set forth below.

**SIXTH CLAIM FOR RELIEF**
**Violation of California Labor Code §§ 6310 and 98.6**
**Defendants are Defendants ABM Government Services, LLC,**
**ABM Industries Incorporated and Does 1-10, inclusive**

47. Plaintiff refers to the allegations of paragraphs 1-6 and 15-17 of the complaint and

incorporates the same herein by this reference as though set forth in full.

48. On September 22, 2014, Francisco Archiga, a housekeeper, told Ms. DiGerlando that on September 19, 2014, he and other housekeepers had cleaned an operating room, OR #5, which had had a patient with MRSA which is a staph bacterial infection resistant to many antibiotics. They had cleaned OR #5 at 3:30 p.m. and were not told until 5:20 p.m. that there had been a MRSA patient in the room. Thus, for nearly two hours they were in the same exposed scrubs cleaning other rooms that they had on when they had cleaned OR #5 with the MRSA patient. Mr. Archiga said that when he learned it was a MRSA patient's room, he told Mr. Singh he wanted to fill out an accident/injury report, but Mr. Singh wouldn't let him fill out the report. He also said that Mr. Singh told him to go home and not to worry, that nothing was going to happen to him. Ms. DiGerlando told Mr. Archiga that she would disclose what he had told her to John Barnes, ABM's onsite safety officer at the time. She thereafter did disclose what Mr. Archiga had told her to Mr. Barnes. She also told Mr. Barnes about how they could have spread the MRSA infection to others by continuing to clean other rooms in their contaminated scrubs.

49. Mr. Barnes disclosed what Ms. DiGerlando had told him to Mr. Fuzie, and also told Mr. Fuzie that accident/injury reports should be completed. Mr. Fuzie disclosed to Mr. Klohn what Mr. Barnes had told him. Mr. Barnes also disclosed what Ms. DiGerlando had told him to Doug Turner of the corporate office.

50. In the morning on September 24, 2014, Mr. Barnes told Ms. DiGerlando that the housekeepers who cleaned OR#5 should complete accident/injury report forms. Subsequently, that day in the housekeeping office, Ms. DiGerlando helped Mr. Archiga complete an accident/injury report form regarding the MRSA incident. While they were there, Mr. Klohn came in. He angrily said that they were not to submit an accident/injury report, that the likelihood of the housekeepers becoming ill was slim to none, and that in the future, anything should go to him before it went to Mr. Barnes, the safety officer. Ms. DiGerlando told Mr. Klohn that the law required that the accident/injury report be submitted. Mr. Klohn angrily stormed off. Ms. DiGerlando thereafter submitted the completed accident/injury report form to Mr. Barnes.

51. At about 1:11 p.m. in the afternoon on September 24, Doug Turner of the corporate office

emailed Mr. Fuzie with a cc to Mr. Barnes, Mr. Klohn, and others, stating in relevant part:

"We need to immediately have each exposed employee call NurseLine and speak with the RN taking the call and information.

- Also how are we normally notified that we will be cleaning an area that there will be a possibility of MRSA exposure?

- Where was the breakdown in this instance?

- What PPE were these employees wearing during the time they were cleaning OR 5?

- What additional PPE would have been worn if we had of known about the possible exposure?

"NL will likely need to know answers to the above."

52. Later on September 24, Mr. Archiga came again into the office, Ms. DiGerlando called NurseLine and gave the nurse all information required of her, and then put Mr. Archiga on the line who completed the interview in Spanish. Mr. Klohn was also in the office at this time. Throughout Mr. Archiga's interview, Mr. Klohn was laughing with his back to Mr. Archiga and Ms. DiGerlando. When Mr. Archiga finished the interview and hung up, he told Mr. Klohn that the nurse said that if there was another accident incident in the future, the supervisor should report it immediately. Mr. Klohn said that Mr. Singh had reported the incident to Mr. Klohn, Teri Storie who was the Air Force's quality control person, and to infection control. Mr. Archiga repeated that Mr. Singh should have filed the report.

53. Over a period of days, Mr. Barnes urged Mr. Fuzie to take disciplinary action against Mr. Klohn and Mr. Singh for their conduct in regard to the MRSA incident and their refusal to report it. Ms. DiGerlando is informed and believes that Mr. Fuzie refused to take disciplinary action against Mr. Klohn or Mr. Fuzie.

54. Labor Code § 6310 prohibits retaliation against an employee for complaining about or disclosing workplace safety matters or for being perceived as having complained about or disclosed workplace safety matters. Ms. DiGerlando engaged in conduct protected by Labor Code § 6310 in regard to the MRSA incident, including without limitation by disclosing information related to the incident to Mr. Barnes both orally and through the submission of the accident/injury report and by insisting to Mr. Klohn that the law required the report to be filed.

55. Labor Code § 98.6 prohibits retaliation against an employee for exercising her rights

under the Labor Code. Ms. DiGerlando engaged in conduct protected from retaliation under Labor Code § 98.6 in regard to the MRSA incident, including without limitation by disclosing information related to the incident to Mr. Barnes both orally and through the submission of the accident/injury report and by insisting to Mr. Klohn that the law required the report to be filed., in that by engaging in such conduct, she was exercising her rights under the Labor Code, including without limitation under Labor Code § 6310.

56. On November 24, 2014, defendants terminated Ms. DiGerlando based on false and pretextual reasons as alleged in paragraphs 15-17 above.

57. Ms. DiGerlando's protected conduct under Labor Code §§ 6310 and 98.6 was a substantial motivating reason for defendants' decision to terminate her. Thus, defendants violated Labor Code §§ 6310 and 98.6 by terminating Ms. DiGerlando.

58. As the proximate result of defendants' violation of Labor Code §§ 6310 and 98.6, Ms. DiGerlando has suffered damages to be shown according to proof, including without limitation, for lost income and benefits with prejudgment interest thereon.

59. As the further proximate result of defendants' violation of Labor Code §§ 6310 and 98.6, Ms. DiGerlando has had to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown according to proof.

WHEREFORE, Ms. DiGerlando prays judgment against defendants ABM Government Services, LLC, ABM Industries Incorporated and Does 1-10, inclusive, as set forth below.

**SEVENTH CLAIM FOR RELIEF**
**Violation of California Labor Code §§ 1102.5 and 98.6**
**Defendants are Defendants ABM Government Services, LLC,**
**ABM Industries Incorporated and Does 1-10, inclusive**

60. Plaintiff refers to the allegations of paragraphs 1-6, 15-17, and 48-53 of the complaint and incorporates the same herein by this reference as though set forth in full.

61. Labor Code § 1102.5, subdivision (b), states in relevant part: "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information to a . . . person with authority over the employee or another employee who has the

authority to investigate, discover, or correct the violation or noncompliance . . . , if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties." Ms. DiGerlando had reasonable cause to believe that the information she disclosed to Mr. Barnes, and her disclosing to Mr. Klohn that the law required the submission of the accident/injury report, disclosed a violation of state or federal statutes, rules or regulation, including without limitation statutes, rules and regulations regarding workplace safety and regarding what procedures to use when cleaning a room where there was a MRSA patient. In this regard, it should be noted that David Grant Medical Center is a U.S. Air Force facility. Mr. Barnes was another employee who had the authority to investigate, discover or correct these violations. Mr. Klohn was an employee with authority over Ms. DiGerlando. Thus, Ms. DiGerlando's above disclosures to Mr. Barnes and Mr. Klohn were protected conduct under Labor Code § 1102.5.

62. Labor Code § 98.6 prohibits retaliation against an employee for exercising her rights under the Labor Code as well as for engaging in conduct delineated in Labor Code § 1102.5. Ms. DiGerlando engaged in conduct protected from retaliation under Labor Code § 98.6 in regard to the MRSA incident, including without limitation by disclosing information related to the incident to Mr. Barnes both orally and through the submission of the accident/injury report and by insisting to Mr. Klohn that the law required the report to be filed., in that by engaging in such conduct, she was exercising her rights under the Labor Code, including without limitation under Labor Code § 1102.5, and engaging in conduct delineated in Labor Code § 1102.5.

63. On November 24, 2014, defendants terminated Ms. DiGerlando based on false and pretextual reasons as alleged in paragraphs 15-17 above.

64. Ms. DiGerlando's protected conduct under Labor Code §§ 1102.5 and 98.6 was a substantial motivating reason for defendants' decision to terminate her. Thus, defendants violated Labor Code §§ 1102.5 and 98.6 by terminating Ms. DiGerlando.

65. As the proximate result of defendants' violation of Labor Code §§ 1102.5, and 98.6, Ms. DiGerlando has suffered damages to be shown according to proof, including without limitation, for

lost income and benefits with prejudgment interest thereon, emotional distress, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation, and other nonpecuniary losses.

66. Defendants' violation of Labor Code §§ 1102.5 and 98.6 was malicious, oppressive, fraudulent, and done with reckless and conscious indifference to Ms. DiGerlando's rights, and Ms. DiGerlando is entitled to an award of punitive damages therefor to be shown according to proof.

67. As the further proximate result of defendants' violation of Labor Code §§ 1102.5 and 98.6, Ms. DiGerlando has had to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown according to proof.

WHEREFORE, Ms. DiGerlando prays judgment against defendants ABM Government Services, LLC, ABM Industries Incorporated and Does 1-10, inclusive, as set forth below.

**EIGHTH CLAIM FOR RELIEF**
**Tortious Discharge in Violation of Public Policy**
**Defendants are Defendants ABM Government Services, LLC,**
**ABM Industries Incorporated and Does 1-10, inclusive**

68. Plaintiff refers to the allegations of paragraphs 1-18, 23, 29-32, 37-38, 43, 48-57, and 61-64 of the complaint and incorporates the same herein by this reference as though set forth in full.

69. As the proximate result of plaintiff's taking of medical leave, her physical disability and sex, and her engaging in conduct that was protected from retaliation under Labor Code §§ 6310, 1102.5, and 98.6, plaintiff was terminated in tortious violation of public policy.

70. As the proximate result of defendants' tortious discharge of her in violation of public policy, Ms. DiGerlando has suffered damages to be shown according to proof, including without limitation, for lost income and benefits with prejudgment interest thereon, emotional distress, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation, and other nonpecuniary losses.

71. Defendants' tortious discharge in violation of public policy was malicious, oppressive, fraudulent, and done with reckless and conscious indifference to Ms. DiGerlando's rights, and Ms. DiGerlando is entitled to an award of punitive damages therefor to be shown according to proof.

72. As the further proximate result of defendants' tortious discharge in violation of public policy set forth in this claim for relief, Ms. DiGerlando has had to hire attorneys and incur litigation

expenses to prosecute this lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown according to proof.

WHEREFORE, Ms. DiGerlando prays judgment against defendants and each of them as follows:

1. On the first claim for relief, against defendants and each of them, for damages to be shown according to proof, including without limitation, for lost income and benefits with prejudgment interest thereon, liquidated damages equal to the amount awarded plaintiff for lost income and benefits with prejudgment interest thereon, and for reasonable attorneys' fees and litigation expenses to be shown according to proof;

2. On the second through fifth and seventh and eighth claims for relief, against defendants ABM Government Services, LLC, ABM Industries Incorporated, and Does 1-10, inclusive, for damages to be shown according to proof, including without limitation, for lost income and benefits with prejudgment interest thereon, emotional distress, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation, and other nonpecuniary losses, and for punitive damages; and for reasonable attorneys' fees and litigation expenses to be shown according to proof;

3. On the sixth claim for relief, against defendants ABM Government Services, LLC, ABM Industries Incorporated, and Does 1-10, inclusive, for damages to be shown according to proof, including without limitation, for lost income and benefits with prejudgment interest thereon; and for reasonable attorneys' fees and litigation expenses to be shown according to proof;

4. For costs of suit; and

5. For such other and further relief as this Court deems just and proper.

DATED: November 27, 2016

          HIGHMAN & HIGHMAN
          A PROFESSIONAL LAW ASSOCIATION

          By/s/ Bruce J. Highman
           Bruce J. Highman
           Attorneys for Plaintiffs

/

/

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury trial.

DATED: November 27, 2016

                    HIGHMAN & HIGHMAN
                    A PROFESSIONAL LAW ASSOCIATION

                    By/s/ Bruce J. Highman
                      Bruce J. Highman
                      Attorneys for Plaintiff